TRUMBO, Ex'r of NEFF *vs.* BLIZZARD & JACOBS.
*December,* 1833.

Where all usurious contracts are declared by law to be null and void, there can be no recovery either at law or in equity, in a suit instituted upon an instrument infected with usury, if the defence of usury be pleaded; the very instrument that is sought to be enforced being null and void.

When a mortgage is given on an usurious consideration, the plea of usury either by the mortgagor or his alienee, is a full defence to a bill for a foreclosure by the mortgagee.

But there is a recognized distinction between that and the case of a mortgagor who goes into Chancery, seeking relief against the mortgage on the

ground of usury, which will only be extended to him on his paying, or offering to pay, the principal and legal interest of the sum due, and this on the principle, that he who seeks equity, to obtain relief must do equity.

APPEAL from *Baltimore* county court as a court of Chancery.

The present bill was filed on the 28th May, 1829, by *Henry Neff* the appellant's testator, in his life-time to foreclose two mortgages, executed to him by the appellee *John Blizzard,* the one dated on the 25th April, 1818, the other on the 15th May, 1821, to secure the several sums of $1000 and $550, with interest, on the days therein limited.

The bill alleged that the appellee *George Jacobs,* was in possession of the mortgaged premises, claiming title thereto as the purchaser at a sheriff's sale, under a judgment rendered against the mortgagor, subsequently to the mortgages; which was admitted by the answers.

Both the answers alleged that the mortgages were given upon usurious considerations, and the answer of *Jacobs* relied on the plea of usury as a defence to the complainant's bill.

The evidence is sufficiently adverted to by his honor the chief judge, who delivered the opinion of this court.

The county court (ARCHER, Ch. J.,) on the 26th November, 1831, dismissed the bill with costs.

From this decree the appellant appealed to the court of Appeals.

The cause was argued before BUCHANAN, Ch. J., and STEPHEN, and DORSEY, J.

*Gill,* for the appellant contended.

1. That the defence of usury set up by the answers is not sustained by the evidence.

2. That *John Blizzard* was not a competent witness for the defendants. It is his debt, and he is interested in the event of the suit, being responsible for costs. *Chambers vs. Chambers,* 4 *Gill and Johns.* 420.

3. That although the defence of usury may be sustained by the evidence, still the complainant is entitled to his principal and legal interest.

4. That it is not competent for *Jacobs*, who was a stranger to the contract between *Neff* and *Blizzard*, and who cannot derive any possible benefit by sustaining the charge of usury to set up that defence in this cause. *De Wolf vs. Johnson*, 10 *Wheat*. 367, 393. 4 *Johns. Ch. Rep.* 332.

*T. P. Scott*, on the same side.

*First Point.* *Blizzard* is not a competent witness; it is his debt, and he only can gain by defeating the claim. He is a party and is liable for costs if we succeed. 10 *Wheat. Rep.* 384.

*Second Point.* Reject *Blizzard's* testimony, and there is *no direct* evidence of the usury—but testimony of *Neff's custom*, and the weight of this testimony is in favor of *Neff*.

*Third Point.* It is a principle of equity, that if a party seeks to be relieved from a usurious contract, and comes into court as plaintiff, he must pay principal and legal interest. *Legour et al. vs. Wante*, 3 *Harr. and Johns.* 184. *West vs. Beanes*, 3 *Harr. and Johns.* 570. So also at law. *Lucas vs. Latour*, 6 *Harr. and Johns.* 100. 1 *Johns. Ch. Rep.* 368. 2 *Bro. Ch. Rep.* 649. 4 *Ib.* 436.

But we are told that if the usurer is plaintiff in equity as at law, and the defendant pleads and proves the usury, the plaintiff must lose his debt. Why so? Interest is lawful and not immoral; the rate of interest is matter of municipal arrangement, and usury is interest beyond the legal rate.

The moral and legal obligation to pay principal and legal interest, is beyond doubt in some cases, viz. where the borrower is plaintiff and seeks relief. Why not also when the borrower is defendant and seeks relief?

The forfeiture (by the usurer) is at law. Equity does not decree forfeits, but on the contrary relieves from them.

What is forfeited? Not the debt, not the moral obligation to pay, these remain, the securities are forfeited. 1704, *ch.* 69. *sec.* 2, 3.

Not the debt, but the evidence of debt is destroyed by proof of the usury.

Not the debt, for like limitations the evidences of the debt may be destroyed—dead—but the debt remain and be revived. A promise to pay a bond barred by time, will not take it out of the statute, 3 *Gill and Johns.* 504, because the bond, the evidence of debt is dead, but the moral obligation remains, the debt remains, and *assumpsit* may be maintained on the new promise. 7 *Harr. and Johns.* 464-5.

So if the usurious bond is destroyed and a new one taken on legal interest, it is good. 2 *Taunt.* 184. 10 *Wheat.* 392. And why? because the moral obligation remains, the debt remains, the old dead securities or evidences of debt are put away, but the debt is not gone.

Again, if the security of the borrower pay the usurious debt and has a counter security, he can recover on it. *Robinson vs. May, Cro. Eliz.* 588. And why? The usurious bond (the evidence of debt) was void, was forfeited, but the debt remained.

Limitations does not extinguish the debt, but suspends or destroys the remedy. 1 *Harr. and Gill,* 212, 213. So usury does not destroy the debt, but only the evidence.

Again, the evidence of debt (the bond or note for instance) is voidable only, not void. 10 *Wheat. Rep.* 392, 393. And although the usury is apparent, it must be pleaded. 1 *Chitty on Plead.* 425. The debt remains, but you may exclude the evidence.

The defendants have pleaded the usury; if the court think their plea sustained by the evidence let them have the benefit of it; take off the usury, but give the plaintiff principal and legal interest.

The remarks of the court in 5 *Johns. Ch. Rep.* 136, and in 4 *Gill and Johns.* 439, 440, seem to imply that in equity, if the usurer is plaintiff, and the usury is pleaded by the defendants and sustained by the evidence, the plaintiff's bill must be dismissed. But in these cases this point did not arise, and the remarks are to be considered as the dictum

of the judge who pronounced them. So also in 1 *Fonbq. Equity, page* 13, *note (h)* with reference to *Roll's Abr.* but the reference to *Roll* does not sustain the annotator on *Fonblanque.* *Roll* speaks of suits in courts of common law.

*Fourth Point.* See 10 *Wheat. Rep.* 393, 394, in point. The principle contended for is also recognized in 4 *Johns. Ch. Rep.* 332.

BUCHANAN, Ch. J., delivered the opinion of the court.

Having attentively examined the testimony spread upon this record, we are clearly of opinion that each of the deeds of mortgage set out in the bill of complaint, was given for a grossly usurious consideration.

A number of witnesses appear to have been examined, some of whom swear that they had borrowed money of *Neff,* the appellant's testator, at six per cent. interest; others that they had known him to lend money at an interest of six per cent. and had never known him to charge more; others, that they had calculated the interest for him, on notes that he held of others, and always at the rate of six per cent. One swears that he had himself borrowed money from him at *nine* per cent., and another that he had borrowed from him at *twelve* per cent.

The two mortgage deeds from *Blizzard* to *Neff* are dated, the first on the 25th April, 1818, and the second on the 25th of May, 1821. *Buckingham* swears that in June 1829, *Neff* told him "that he lent no money to any man for less than twelve per cent. interest, and had not done so for many years, and would not do it to any one." *Ogg* swears "that *Neff* told him about twelve or thirteen years ago, that *John Blizzard* was an honest little man, and was paying him more than twelve per cent. interest." *Merriman* swears, that sometime in the year 1818 or 1819, when speaking with *Neff* concerning *Blizzard,* *Neff* raised his hand towards *Blizzard's* house which was in view, and not more than a quarter of a mile off and said, "it is the same thing to me, as our neighbour pays me twelve per cent." And *Parish*

swears, that some time in the year 1828, *Neff* told him, "that *George Crutman* had been paying him twelve per cent. for twenty years, and that *John Blizzard* had been allowing him twelve per cent. for fifteen years, which was secured by his notes and his property, and that *Blizzard's* debt was secured in the same way, that his, the witnesses was, which was by notes and mortgage of his property."

It is manifest therefore, independent of the evidence of *John Blizzard* himself, that whatever may have been the rate of interest at which *Neff* had loaned money to other persons, (which is not very material to this case,) he was exacting twelve per cent. from *Blizzard,* and there being no evidence of any pecuniary transaction between them, except the mortgages and the considerations for which they were given, the declarations of *Neff* must be taken to have had reference to these transactions, and to taint them with usury.

But it is said, that admitting the mortgages to have been given on usurious considerations, *Jacobs,* who is in possession of the mortgaged premises, by purchase at a sheriff's sale under a judgment against *Blizzard,* cannot be permitted to defeat the claim of the appellant, who is seeking to foreclose the mortgages; and for that *De Wolf vs. Johnson,* 10 *Wheat.* 367, is relied upon. We had thought differently, but have been driven by the reference to that high authority, to look into the books upon which the opinion delivered in that case appears to have been founded. And with all the deference to which the Supreme Court is so eminently entitled, we have not been able to arrive at the same conclusion.

Indeed as far as the principle is there asserted, that the alienee of a mortgagor cannot avail himself of the defence of usury, to a bill of foreclosure by the mortgagee, that case has since been overruled in the case of *Lloyd vs. Scott,* 4 *Peters' Rep.* 205. Where all usurious contracts are declared by law to be null and void, there can be no recovery either at law or in equity, in a suit instituted upon an instrument infected with usury, if the defence of usury be

pleaded; the very instrument that is sought to be enforced being utterly void.

Where a mortgage is given on an usurious consideration, the plea of usury, either by the mortgagor or his alienee, is a full defence to a bill in Chancery for a foreclosure by the mortgagee, who goes to enforce a void instrument.   But there is a recognized distinction between that, and the case of a mortgagor or his grantee who goes into chancery seeking relief against the mortgage on the ground of usury ; which will only be extended to him on his paying or offering to pay the principal and legal interest of the sum due, on the principle that he who seeks equity, to obtain relief must do equity.

By the law of this State, all bonds, contracts, and assurances whatsoever, whereby there shall be reserved an interest above the rate of six per cent. on money loaned, are declared to be "utterly void."

Here there was an interest of twelve per cent. intended to be secured, and the defendant, *Jacobs*, having purchased the mortgaged premises, at a sheriff's sale regularly made under a judgment against *Blizzard* the mortgagor, and this being a bill by the mortgagee for a foreclosure, we think he is entitled to avail himself of the defence of usury, which is insisted upon in the answers against this mortgage, so tainted and void.

**DECREE AFFIRMED WITH COSTS.**