Baugher, *et al.*, *vs.* Nelson.—1850.

SAMUEL GRINDER, MICHAEL GRINDER, JACOB GRINDER AND JOHN BAUGHER, SURVIVING OBLIGORS OF JOHN GRINDER, *vs.* ROBERT NELSON.—*December* 1850.

A general demurrer brings before the court the whole record, and judgment will be rendered thereon against the party who commits the first vice or imperfection in pleading.

In all cases susceptible of doubt and where a statute is open to interpretation it is to be construed to operate prospectively, but where a statute either by express provision or necessary implication is retroactive the rule does not apply,

The act of 1845, ch. 352, which declares "that in any suit or action hereafter to be brought in any court of law or equity in this State upon any bond or contract," &c. the party who seeks to plead the usury act of 1704, must specially plead the same, and set out in his plea the sum actually due with legal interest, is retroactive as to contracts made before its passage, and is not for this reason unconstitutional or void.

It is incumbent on those who assail a statute on the ground of its invalidity to make out a clear case of legislative usurpation.

An *ex post facto* law within the meaning of the constitution of the *United States*, relates to crimes and has no application to private rights or civil remedies.

The act of 1845, cannot be regarded as violating the obligation of any contract: so far as it operates upon the contract of loan, it upholds and sustains it in part,

A State law, though it may divest by its retroactive operation, vested rights, is not for this reason to be treated as an infraction of the constitution of the *United States*.

The constitution of the *United States* does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws, and laws impairing the obligation of contracts.

The 15th article of the bill of rights of this State only forbids retrospective criminal laws, meaning *ex post facto* laws, and is a recognition of the right of the legislature to pass retrospective laws relating to civil cases and contracts.

A statute which by its retrospective operation divests vested and valuable rights, is, in the absence of any express prohibition in the constitution of the *United States*, or of this State, unauthorised and void, as arbitrary and violatory of the first rules of right and justice, and contrary to the fundamental principles of the social compact.

Under the act of 1704, a party could in equity obtain relief against an usurious contract only by paying or offering to pay the principle sum with legal interest.

Neither could the borrower maintain an action of trover at law, under this act of 1704, to recover goods hypothecated to secure an usurious debt, unless he tendered the amount actually loaned.

Baugher, *et al., vs.* Nelson.—1850.

If a borrower has paid money on an usurious contract, neither law nor equity will enable him to recover more than the excess paid beyond the principal and lawful interest.

The borrower is at all times and under all circumstances under a moral obligation to pay, or tender, the sum actually loaned with legal interest as a fair compensation for its use.

The act of 1845, only compels the borrower, who as a *defendant* seeks to protect himself against a usurious contract, to do precisely what he was before obliged to do when he stood in the position of *plaintiff*.

In this view this act is plainly remedial, the exercise of legislative authority over the subject of remedies, a power which unquestionably may be exercised at pleasure, in relation to past, as well as future contracts.

An act which divests a right through the instrumentality of the remedy, and under the pretence of regulating it, is as objectionable as if aimed at the right itself.

But the vested rights thus guarded are those only to which a party may adhere, and upon which he may insist without violating any principle of sound morality; there can be no vested right to do a wrong, or violate a moral duty, or resist the performance of a moral obligation.

A borrower can have no *right* as a matter of private justice, to repudiate his contract, so as to escape from the payment of the sum actually received.

The act of 1845, ch. 352, is free from objection, and is to be enforced as a valid exercise of legislative power.

APPEAL from *Frederick* county court.

This was an action of *debt* brought by the appellee against the appellants on the 4th of September 1846, upon a single bill executed by the latter on the 11th of April 1840, for $350, payable to the appellee twelve months after date. *Baugher* one of the defendants appeared and pleaded several pleas of usury under the act of 1704. To these pleas the plaintiff replied, that there was at the commencement of the suit, and still is due on the said single bill, $350, the principal actually loaned with interest at six per cent., wherefore he prays judgment upon such principal sum and interest, to be ascertained by a verdict of a jury to be found under, and according to, the act of 1845, ch. 352, passed the 10th of March 1846.

To this replication the defendant, *Baugher*, demurred, but the court overruled the demurrer and rendered judgment for the plaintiff for the amount of the single bill, and damages and costs, from which the defendants appealed.

The cause was argued before SPENCE, MAGRUDER, MARTIN and FRICK, J.

F. A. SCHLEY for the appellants, contended.

1st. That at the time the contract was made, it was tainted by usury, and that as the law then existed, and the right of the appellant under the law, there was *vested* in him the *right* to declare the contract void, as usurious, and there was no legal obligation on his part to perform it, and no legal right vested in the appellee to enforce it.

2nd. That the act of 1845, having been passed long after the contract was made, and after the right of the appellant was vested, to repudiate the contract and relieve himself from it, and all obligation under it, it was not competent for the legis-lature to pass a law so to operate upon this contract, and the rights of the appellant under it, as to divest the appellant's right, set up the contract anew, engraft upon it new rights on the part of the appellee, and create new obligations on the part of the appellant, not existing at the time of the contract, and that, therefore, the appellee cannot call to his aid the provisions of this act of Assembly, to enforce his claim against the appellant, who is a mere security, and as such viewed by the law.

Jos. M. PALMER for the appellee, made the following points.

1st. On the general demurrer to the plaintiff's replication, the court will examine and consider the whole record and mount up to the first defect in substance, and give judgment against the party whose pleadings are first substantially defec-tive.

2nd. The defendant's (*John Baugher*,) plea of usury in bar of the action, is defective in substance, and bad on general demurrer, it not being pleaded in the form and manner requir-ed and directed by the act of Assembly of 1845, ch. 352.

3rd. The plaintiff's replication is substantially correct, upon which an issue of fact ought to have been framed, to try by a jury said issues, to ascertain the actual sum of money fairly due upon the said bill obligatory as having been actually loaned,

&c. with interest thereupon at the rate of six per cent. per annum, according to the provisions of said act of 1845, &c.

4th. The main question for the consideration of the court upon the pleadings in this case, is, whether the passage of the act of 1845, ch. 352, was a constitutional exercise of legislative power, so far as it concerns pre-existing contracts, &c. The appellee insists that the act does not, in any way, conflict with the constitution of the United States, or the constitution of this State.

MARTIN J., delivered the opinion of this court.

In this case an action of debt was instituted in *Frederick* county court on a single bill, executed on the 11th of August 1840, by which the appellants stipulated to pay to the appellee the sum of $350, with interest, from the date of the note. It appears from the record that *John Baugher*, one of the appellants, appeared in court, and pleaded in bar of the action the statute of usury of 1704, chap. 69, in force at the time this loan was made and the contract created. This suit was instituted on the 4th of September, 1846, and to this plea in bar of the action upon the ground of usury, the plaintiff filed a replication, in which he averred that the suit was brought to recover the sum due on the note, with legal interest thereon, and prayed judgment for such sum as might be ascertained by a jury to be fairly and actually due, in conformity with the provisions of the act of Assembly of 1845, chap. 352. To this replication a general demurrer was interposed. Judgment was rendered upon this demurrer, in favor of the plaintiff, and upon an appeal from this judgment of the county court, the case has been brought here for our examination and revision.

We have already stated, that the plea filed in this case by the defendant, was grounded on the usury act of 1704, chap. 69, If that act is to be treated as unrepealed, and in force with respect to this particular transaction, then the plea must, of course, be held as an absolute bar to the action. If, on the contrary, the act of Assembly of 1704, chap. 69, is to be considered as abrogated with reference to this contract, by the act of 1845,

chap. 352, then the plea is defective, as it does not conform to the provisions of the latter statute; and judgment would be rendered upon the general demurrer, which brings before the court the whole record, against this plea, as containing the first vice or imperfection. *Morgan vs. Morgan,* 4 *Gill and John.,* 398. *State vs. Nicols,* 10 *G. & John.,* 27. It is apparent, therefore, that the controversy in this case rests entirely upon the legal sufficiency of this plea. A question, the solution of which depends upon the further questions, whether the act of 1845, chap. 352, is to be interpreted as embracing this particular case; and if so, whether it is to be enforced by the courts as a valid and constitutional act within the range and scope of the legislative power?

The point made by the counsel for the appellant, that this act is to be constructed by the court as prospective in its operation, and intended by the legislature to apply only to such contracts as were created after its enactment, cannot be maintained. The wisdom and inherent justice of the rule which declares that, in all cases susceptible of doubt, and where the statute is open to interpretation, it shall be so construed as to operate prospectively, is admitted to its utmost extent. It is founded upon the presumption, that the legislature did not intend to make a new rule for past transactions. *Nova constitutio futuris fomam debet imponere non præteritis.* But this general principle, salutory and well established as it is, as an element of jurisprudence, can have no application to a case where the legislature have declared, in language too express and plain to be mistaken, that they designed to give to the statute in question, a retroactive operation. In such a case there is no room for interpretation. Whether an act possessing this retroactive character is to be condemned as an unconstitutional and unauthorised exercise of legislative power, is another question; but nothing can be more clear than that so long as this act is recognized as a valid and operative statute, it must be enforced in accordance with the will of those who created it. In the case of *Goshen vs. Stonington,* 4 *Conn. Rep.,* 220, the Supreme court of *Connecticut,* when speaking upon this subject, said:

"It must be admitted, that by construction, if it can be avoided, no statute should have a retrospect anterior to the time of its commencement. This principle is founded on the supposition that laws are intended to be prospective only. But when a statute, either by explicit provision or necessary implication, is retroactive, there is no room for construction; and if the law ought not to be effectuated it must be on a different principle."

This is the predicament of the act of 1845, chap. 352. It was passed on the 10th of March, 1846, and declares, "that in any suit or action hereafter to be brought in any court of law or equity in this State, upon any bond, &c., or upon any contract, &c., whether the same relate to the loan of any money, &c., in which any person shall seek to avail himself of the provisions of the act of Assembly of 1704, it shall be incumbent on such person specially to plead the same, and in such plea to set out the sums, both principle and interest, actually and fairly due on such bonds, &c., estimating the principal debt actually loaned or contracted for, with interest thereupon, at the rate of six per cent. per annum." The expressions of this statute are too clear and explicit for dispute. There is no room for construction. The language of the act is, "that in any suit hereafter to be brought," &c. That is, in any suit brought after the 10th of March, 1846, it shall be incumbent on the defen-dant to plead as required by its provisions. This action was instituted on the 4th of September, 1846, and it is impossible to do otherwise than determine that this case is covered by the act of 1845, although the note in controversy was executed many years before its enactment.

The next question presented for our examination is, whether the act of 1845, assuming it to be retrospective in its character, is to be treated as an unconstitutional exercise of legislative power, so far as it operates upon pre-existing contracts? Questions of this kind are always regarded by the courts as the most important that can be submitted for their adjudication. It is certainly the attribute of the judicial tribunals in this country, to annul an act of the legislature when it is manifest to the

courts, that in passing it, the legislature have violated, or abused the powers granted to them by the people. But this high power is to be exercised with the most guarded circumspection and care. An act emenating from a co-ordinate branch of the government is presumed to be valid. And all agree that it is incumbent upon those who assail a statute on the ground of its invalidity, to make out a clear case of legislative usurpation. We proceed to inquire if this act is obnoxious to the objections which have been urged against it.

We did not understand the counsel for the appellant as contending that this act was to be considered as unconstitutional upon the ground of its repugnancy to the 10th section of the 1st article of the constitution of the United States, prohibiting the States from passing *ex post facto* laws, or laws impairing the obligation of contracts. There certainly could be no foundation for such a proposition. This law, although retroactive in its character, has none of the characteristics of an *ex post facto* law, as that phrase was understood by the convention who framed, and the people who adopted the federal constitution. An *ex post facto* law relates to crimes, and has no application to private rights or civil remedies. *Calder vs. Bull*, 3 *Dal.*, 386. *Fletcher vs. Peck*, 6 *Cranch*, 187. It is equally clear, that the statute in question cannot be regarded as violating the obligation of any contract. There is no contract invaded by it. So far as it operates upon the contract of loan, it upholds and sustains it in part. *Andrews vs. Russel*, 7 *Blackford*, 475. And it is now established, by the adjudications of the Supreme Court, that even if this act could be regarded as divesting, by its retroactive operation, vested rights, it would not, for that reason, be treated as an infraction of the constitution of the United States. *Satterlee vs. Matthewson*, 2 *Pet.*, 413, *Watson vs. Mercer*, 8 *Pet.*, 110. *Charles River Bridge vs. Warren Bridge*, 11 *Pet.*, 540.

In *Satterlee vs. Matthewson*, 2 *Pet.*, 413, the court said: "The State law is said to be retrospective. Be it so; but retrospective laws, which do not impair the obligation of contracts, or partake of the character of *ex post facto* laws, are not

condemned or forbidden by any part of the constitution of the United States."

In *Watson vs. Mercer*, 8 *Pet.*, 110, the court declared, that they had no power "to pronounce an act of the State legislature void, as contrary to the constitution of the United States, from the mere fact that it divests antecedent vested rights of property. The constitution of the United States does not prohibit the States from passing retrospective laws generally, but only *ex post facto* laws." The principles thus enunciated, were quoted with approbation, and reaffirmed by *Mr. Chief Justice Taney*, in delivering the opinion of the court in the case of *Charles River Bridge vs. the Warren Bridge*, 11 *Pet.*, 540.

It is impossible to maintain that the act of 1845 can be considered as violating any of the prohibitions or restrictions on the legislature, to be found in the bill of rights, or constitution of the State of *Maryland*. In the bill of rights, art. 15, it is declared, "that retrospective laws, punishing facts committed before the existence of such laws, and by them only declared criminal, are oppressive, unjust, and incompatible with liberty; wherefore, no *ex post facto* law ought to be made." This article, by its very terms, is confined to retrospective criminal laws, meaning *ex post facto* laws. It is a recognition of the right in the legislature to pass retrospective laws, so far as they relate to civil cases and contracts. *Expressio unius exclusio alterius*. Our books of statutes are filled with retrospective laws, healing imperfect deeds, or validating defective acknowledgments, which have been rarely impeached, and when assailed, have been invariably sustained by the decisions of the courts.

The counsel for the appellant has, however, contended, that at the time this contract was made, it was tainted with usury; and that, as the law then existed, there was vested in him the right to declare the contract void, as usurious, and to repudiate it; that, by the act of 1845, he has been divested of this right; that a statute thus retrospectively divesting him of a vested and and valuable right, was an arbitrary act, violatory of the first rules of right and justice, and contrary to the fundamental

principles of the social compact; that an act of this character, is not in the nature of legislative power, and that it is, therefore, to be treated as unauthorized and void, in the absence of any express prohibition to be found against it in the constitution of the United States, or in the constitution of this State. 3 *Dal.*, 388, 6 *Cranch*, 135. 9 *Gill & John.*, 408.

The argument on this point was pressed upon the court by the counsel with great force and ingenuity. We have carefully considered it, and think, that when the rights of the borrower and lender of money on a usurious contract, as they existed under the usury act of 1704, ch. 69, are carefully examined, it will be seen that it is impossible to view the act of 1845 in any other light than as regulating the remedies with respect to such contracts, and in thus modifying and altering the remedy to impose upon the usurious borrower, as a condition on which alone he is to be relieved from the payment of the excessive interest, the performance only of a moral duty, from the discharge of which, no correct man should seek to escape.

In *Trumbo vs. Blizzard*, 6 *G. & J.*, 18, the Court of Appeals, following in this respect the line of the *English* adjudications, determined that a mortgagor who goes into a court of equity seeking to be relieved against a usurious mortgage, will only be heard on the condition that he does himself what is equitable and just, by paying or offering to pay the principal sum with legal interest. *Scott vs. Nesbit*, 2 *Bro. C. C.*, 641.

The same principle is reiterated by the court in *Gordon vs. Trumbo*, 6 *Gill and John.*, 105, on a bill filed by a mortgagor praying discovery as to the usury. The court said "it is a principle well established in pleading in equity, that he who goes into a court of equity to be relieved against his usurious contract, must, in his bill, tender and offer to pay the principal and interest legally due, and confine his claim to the equitable interposition of the court to the usurious excess only."

The doctrine thus enunciated in the cases to which we have referred, is not confined to the courts of equity. It prevails

also in the legal tribunals.   And we therefore find the court in deciding in *Lucas vs. Latour*, 6 *Har. and John.*, 100, that an action of trover could not be sustained by the borrower to recover the value of goods hypothecated to secure a usurious debt, unless the plaintiff had tendered the amount actually loaned.   It also established that if the borrower has paid money upon a usurious contract, both the courts of law and equity will enable him to recover back the excess paid beyond the principal and lawful interest, but not further.

The doctrine announced in the cases to which we have adverted, stands upon the principle that the borrower is at all times and under all circumstances under a moral obligation to pay to the lender the sum actually loaned with legal interest, as a fair compensation for its use.   When a borrower appears in a court of law or equity as a suitor seeking to be relieved from a usurious contract, he will not be heard except on the equitable condition that he pays to his creditor the sum actually and fairly due after deducting the illicit interest, and it is very clear that when the borrower stands before the court in the attitude of a defendant, he is not subject to the same rule which is applied to him when he holds the relation of plaintiff, because in this predicament of the case, the courts have no authority to force upon him the performance of this moral obligation, consistent with the powers, remedies and rules of pleading, by which they are governed in the administration of the law.

What then does the act of 1845 profess to accomplish? The legislature in the exercise of its remedial authority, comes to the aid of the courts and declares that the borrower, who as a defendant, seeks to extricate himself from a usurious contract, shall do precisely what he is obliged to perform, when he asks to be protected against it in the position of a plaintiff.   In this respect the statute is plainly remedial.   It is no more than the exercise of the legislative authority over the subject of remedies.   A power which the legislature may unquestionably exercise at pleasure in relation to past as well as future contracts.   *Bronson vs. Kinzie*, 1 *How. Rep.*, 315.   *Butler vs. Palmer*, 1 *Hill*, 324.

Baugher, *et al.*, *vs.* Nelson.—1850.

It may be said, however, that admitting this statute to be remedial in its form, yet the thing to be protected is the vested right. And that an act which divests a right through the instrumentality of the remedy and under the pretence of regulating it, is as objectionable as if the shaft was levelled directly at the right itself, The proposition is certainly true in reference to cases to which it is applicable. But in this case no vested right was divested. When vested rights are spoken of by the courts as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist without violating any principle of sound morality. In the language of *Judge Duncan* in *Satterlee vs. Mathewson*, 16 *Sarg. and Raw.*, 191, "there can be no vested right to do wrong." In the nature of things, there can be no vested right to violate a moral duty, or to resist the performance of a moral obligation. And although a borrower may be justified in morals as he is in law in resisting the payment of illicit interest extorted from him while he was *in vinculis*, and in consequence of his necessitous condition, he certainly can have no right as a matter of private justice, to repudiate his contract so as to escape from the payment of the sum actually received.

We are perfectly satisfied that this act of Assembly is free from objection, and is to be enforced as a valid exercise of legislative power. We think, therefore, that the judgment of the county court must be affirmed.

There is no force in the objection that the judgment rendered in this case was defective, as not conforming to the replication. The plea in which usury was alone set up as a matter of defence, was bad, as it was not in conformity with the act of 1845, ch. 352. There was therefore in the case no plea, and the plaintiff was entitled to the sum claimed by him in his declaration. The action being founded on a bill obligatory, the intervention of a jury was entirely unnecessary.

JUDGMENT AFFIRMED.