(Decided 20th December, 1872.)

---

THE MAYOR AND COUNCIL OF HAGERSTOWN *vs.*
NATHANIEL SEHNER.

*Validity of the Act of 1867, chapter 282, amending section 2 of Article 82, of the Code, entitled "Riots"—Power of the Legislature over the Counties, incorporated Towns and Cities of the State—Retrospective Laws.*

On the 4th of May, 1867, an action was brought under the provisions of Article 82, of the Code, entitled "Riots," against the Mayor and Council of Hagerstown, a municipal corporation, by a citizen of the town, to recover damages for injury to his hardware store, situated within the corporate limits of the town, and for the destruction, injury and taking away of his goods, and other personal property therein deposited, done by riotous and tumultuous assemblages of people on the nights of the 24th, and 25th of May, 1862. Article 82 of the Code fixed no limit of time within which suits under its provisions might be brought. The defendant, besides "not

Mayor and Council of Hagerstown *vs.* Sehner.

guilty," pleaded that the cause of action had not accrued within three years before suit instituted. The plaintiff demurred to the plea of limitations; and joined issue on the plea of "not guilty." Before the institution of the suit, the Act of 1867, chapter 282, was passed, amending the second section of Article 82, of the Code, by providing that suits might be brought for any cause of action which had theretofore arisen under the first section of the article, within *five* years from the time of its accrual, and not after. It was urged against the demurrer that the Act of 1867, chapter 282, was invalid, as taking from the defendant the vested right to plead the pre-existing limitation of *three* years in bar of the suit. HELD:

1st. That no such vested right existed in the defendant, and that the Act of 1867, chapter 282, was not invalid because its ultimate effect might be to subject the tax-paying inhabitants of the municipality to increased taxation.

2nd. That the power of the Legislature to impose a liability upon the counties, incorporated towns and cities of the State, for injuries done to property by riotous and tumultuous assemblages, as provided in Article 82 of the Code, carried with it the power to direct and determine the time and manner in which such liability should be enforced, and the Act of 1867, chapter 282, was therefore valid.

Between private citizens and counties, incorporated towns or cities of the State, there is a wide and substantial distinction with respect to vested rights protected from legislative power. Such public bodies are public corporations created by the Legislature for political purposes, with political powers to be exercised for purposes connected with the public good in the administration of civil government. They are instruments of government subject at all times to the control of the Legislature with respect to their duration, powers, rights and property. It is of the essence of such a corporation that the government has the sole right as trustee of the public interest, at its own good will and pleasure, to inspect, regulate, control and direct the corporation, its funds and franchises.

The Legislature of this State having the right to pass retrospective laws so far as they relate to civil cases, the retrospective character of the Act of 1867, chapter 282, does not affect its validity.

APPEAL from the Circuit Court for Washington County. The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ROBINSON, J.

*George Freaner* and *Attorney General Syester*, for the appellant.

The right to plead the Statute of Limitations to a cause which has become completely barred, is a vested right—a right to which a party may adhere, and upon which he may insist, without violating any principle of sound morality.

The Legislature can constitutionally extend the time of limitation if the cause of action be not already barred. *Wenston vs. McCormick*, 1 *Smith*, (*Ind.*,) 8; *Royce vs. Hurd*, 24 *Vt.*, 620; *Henry vs. Thorpe*, 14 *Ala.*, 103; and *Angell on Limitations, Par.* 23 *and notes;* because no right to plead the Statute having accrued, the party is presumed to be in possession of, and to have retained his proofs and muniments of defence, and being notified of the extension, could retain them until the extended period had elapsed. This power is conceded because of the acknowledged authority and control which each State has over the *remedies* in use in its own Courts. *Girdner vs. Stephens*, 1 *Heiskell*, 280.

But where the Statute has become a flat bar, under pre-existing laws, it is beyond the constitutional power of the Legislature to pass an Act extending the time: The right to plead the Statute, then, becomes a vested and valuable right, and is beyond the reach of any retrospective legislation, no matter how definite in its terms and purposes and expressions. *Cooley on Const. Lim.*, 357, 365, 369, *et seq.*; *Potter's Dwarris on Stat. and Const. Law*, 164 *to* 167, *and notes;* 2 *Hilliard on Real Property*, 163 *and* 164; *Sedgwick on Stat. and Const. Law*, 659; *Angell on Limitations*, 22 *and* 23, *note*; *Wright vs. Oakley*, 5 *Metcalf*, (*Mass.*,) 400; *Joy vs. Thompson*, 1 *Doug.*, (*Mich.*,) 373; *Hawkins vs. Campbell*, 1 *Eng.*, (*Ark.*,) 513; *Couch vs. McKee*, 1 *Eng.*, 484; *Robb vs. Harlan*, 7 *Barr*, (*Penn.*,) 292; *Forsyth vs. Ripley*, 2 *Greene*, (*Iowa*,) 181; *McKinney vs. Springer*, 8 *Black*,

(*Ind.,*) 506; *Davis vs. Minor,* 1 *Howard,* (*Miss.,*) 183; *Wires & Peck vs. Farr,* 25 *Vt.,* 41; *Davis vs. O'Ferrell,* 4 *Greene,* (*Iowa,*) 168; *Society for Prop. Gospel vs. Wheeler,* 2 *Gallison,* 105; *Holden vs. James,* 11 *Mass.,* 396; 2 *Paine C. C. R.,* 517.

Vested rights are not confined to a party's title to property alone; they are not applicable only and solely to tangible things. A vested right of action is property in the same sense in which tangible things are property, and equally protected against arbitrary interference. *Griffin vs. Wilcox,* 21 *Ind.,* 370; *Norris vs. Doniphan,* 4 *Met.,* (*Ky.,*) 385; *Streuble vs. Mil. & Miss. R. R. Co.,* 12 *Wis.,* 67; *Clark vs. Clark,* 10 *N. H.,* 380; *Westervelt vs. Gregg,* 12 *N. Y.,* 211; *Burch vs. Newbury,* 10 *N. Y.,* 374.

In the case at bar, the appellant, under the law, enjoyed a complete and perfect immunity from all accountability in the premises. Its right to the defence of the Statute of Limitations was as perfect, and complete, and as well assured, as was the right to institute his action assured in the beginning to the appellee. The appellant's right to set up the defence, depended alone and exclusively on its own will, and was dependent on no other power.

By the exercise of that right, it could defend and protect its property, and the estates and property of its inhabitants, its treasure, and the money of the people, in a full, ample and unquestioned manner, and the assurances of this right were as strong and as valuable as any on which persons or parties can possibly rely.

By his *laches* the appellee lost his right to maintain his action—it was *utterly extinguished*—simply and only because the very instant he lost his right, another and countervailing right in the appellant was fixed and established by law, to wit, the right to set up the Statute as a defence. The right to set up the Statute depended alone on the

will and disposition of the appellant. No subsequent acknowledgment of the appellant could be relied on by the appellee to re-invest him with the right and power he had lost, or divest the appellant of the defence and immunity it had acquired, and with which the law clothed it as a protection to its treasure, and the property and money of its people, for no new promise, no acknowledgment, revives a right of action in *torts. Galligher vs. Hollingsworth*, 3 *H. & McH.*, 122; *Hurst vs. Parker*, 1 *Bar. & Ald.*, 92; *Short vs. McCarthy*, 3 *Barn. & Ald.*, 626.

By the operation of law the appellant was as effectually *released* from this demand as if he had actually satisfied it; and so long as the appellant saw fit to stand on the defence which the Statute of Limitations gave it, it was a remedy and answer to the demand of the appellee, so effectual, so complete, so ample and perfect, that not even its own promise and acknowledgment could be set up as a waiver of the defence. And in this respect the rights, remedies and defences with which it stood armed, were as perfect, complete, ample and effectual as if it had actually paid the full extent of the demand. It was actually *released* and exonerated from any further accountability.

If the right to plead the Statute to the appellee's cause of action had become complete—a vested right—one that could be maintained without violating any principle of sound morality, then the Act of 1867, chapter 282, was an unconstitutional exercise of power, because retrospective and destructive of this right. 1 *Kent Com.*, 511, *and notes; Potter's Dwarris on Stat.*, 163 to 166; *Cooley on Con. Lim.*, 369, 370; *The People vs. Livingston*, 6 *Wendell*, 531; *Broom's Legal Max.*, 28; 2 *Paine's C. C. Rep.*, 517; *Girdner vs. Stephens*, 1 *Heiskell*, 280; *Baugher, et al. vs. Nelson*, 9 *Gill*, 299; *Wilderman vs. Mayor, &c., of Balt.*, 8 *Md.*, 551; *Sedgwick on Stat. and Const. Law*, 406 *and* 407.

The Legislature has no more power to deprive a corporation—a municipal corporation—of a vested right, by a rctrospective law, than it has to take it away from an individual. A municipal corporation, such as the Mayor and Council of Hagerstown, is a public corporation, created for public purposes, and is invested with the exercise of a portion of the State's sovereignty within its corporate limits. The exercise of this delegated sovereignty, or any of its chartered functions or powers, is completely subject to legislative control. New powers may be conferred, old ones may be taken away, abridged or enlarged.

Its corporate existence may be destroyed by the repeal of its charter, but there the original sovercignty of the Legislature ceases. Whatever rights of property it may have acquired under laws in force during its existence, or whatever vested and valuable incorporeal rights may have accrued to it, are as much protected from legislative confiscation as those of individuals. It has no "vested right" in any of its corporate functions or delegated sovereignty *as against the State;* but as *against individuals,* whether corporators or strangers, rights acquired under existing laws are as much protected by the guarantees of the Constitution and fundamental law, as those of individuals. Public corporations are to be governed according to the laws of the land. *Regents &c. vs. Williams,* 9 *G. & J.,* 401; *State, use of Wash. Co. vs. Balt. & O. R. R.,* 12 *G. & J.,* 440; *Terrett vs. Taylor,* 9 *Cranch,* 44; 2 *Kent Com.,* (11*th Ed.,*) 305; *The Town of Pawlet vs. Clark, et al.,* 9 *Cranch,* 292.

The corporate name of the appellant is the "Mayor and Council of Hagerstown," and as such it appears upon the record, but in contemplation of law, all the inhabitants of the corporation are parties to the suit, and the judgment may be enforced against the property of any corporator found within the territorial limits. *Russell vs. The Men of Devon,* 2 *Term,* 667; *The King vs. The*

*Inhabitants of Woburn*, 10 *East.*, 395; *The King vs. The Inhabitants of Hardwick*, 11 *East.*, 577; *Riddle vs. Proprietors of Locks, &c.*, 7 *Mass.*, 187; *Inhabitants of Brewer vs. Inhabitants of New Gloucester*, 14 *Mass.*, 216; *Merchants' Bank vs. Cook*, 4 *Pick.*, 405; *Adams vs. Wiscasset Bank*, 1 *Greenleaf*, 361; *Fuller vs. Hampton*, 5 *Conn.*, 417; *Atwater vs. Woodbridge*, 6 *Conn.*, 223; *Cooley on Const. Limitations*, 241 to 246; 1 *Greenleaf on Ev.*, sec. 331; 2 *Kent Com.*, (11*th Ed.*,) 274.

The reason of the law being that the corporation having no corporate fund, and there being no power to compel a resort to taxation, the judgment might otherwise go unsatisfied.

An examination of the charter of the appellants (*Code Pub. Local Laws, Art. XXI, secs.* 109 to 143, *and supplements*,) will show that they are unendowed, and that they have *no power* to resort to taxation to pay this judgment. Therefore, without an enabling Act, the judgment must go unsatisfied or be enforced against the property of some one or more of the corporators within its limits; and if this be correct, the Act of 1867, chap. 282, depriving the corporation of the right to plead the perfected bar of the Statute to the claim of the appellee, effectually destroys the vested right of each and every corporator to a defence, which, without this legislative interference would have protected their property from execution.

*Hy. Kyd Douglas, Z. S. Claggett* and *Wm. M. Merrick,* for the appellee.

There is no constitutional prohibition against the enlargement or suspension of the term of limitations in actions of tort. The privilege of limitations as a defence in cases of tort, is not such a vested right as will be protected by the fundamental law against the legislative power. *Baugher, et al. vs. Nelson*, 9 *Gill*, 309; *Foster vs. Essek Bank*, 16 *Mass.*, 245.

The defence under the Statute of Limitations in an action of tort, is but a favor granted by the Legislature, and no individual (*a fortiori* no corporation) can have a vested right in a legislative indulgence. *Welch vs. Wadsworth*, 30 *Conn.*, 149; *Curtis vs. Leavitt*, 15 *N. Y.*, 9; *Commonwealth vs. Bird*, 12 *Mass.*, 443.

A Legislature has gone to the extent of granting a new trial, after the Court had refused to do so under its rules, and after the term had passed, and the right of one of the parties to property, by virtue of the judgment in the case, had become vested. And the Supreme Court of the United States sustained the Act. *Calder, et ux. vs. Bull, et ux.*, 3 *Dallas*, 386.

The plea of limitations is a plea to the remedy and is not to the merits—it is not amendable, and is not favored by the Courts. *Kunkel vs. Spooner*, 9 *Md.*, 462; *Farmers' Bank of Maryland vs. Sprigg*, 11 *Md.*, 389; *Nelson and wife vs. Bond*, 1 *Gill*, 218; *McCann, et al., Admrs. vs. Sloan & Caldwell*, 25 *Md.*, 575.

But assuming that the Legislature have not the power to deprive an individual of a perfected bar by limitations to an action of tort, the principle has no application to the class of cases embraced by the Act of 1867, chap. 282, because the statutory liability, under the Act, is a liability of counties, cities and towns, all of them public political corporations, parts of the State itself, created and existing, at the pleasure of the Legislature, solely for the public good; and at all times subject to its control in respect to their duration, powers, rights and property. All the so-called vested rights, and all the contracts of such corporations, are subject to the disposing power of the Legislature, and are outside the protection of the Constitution of the United States, or of the fundamental law of the State. Such corporations are but the children of the State, subject, in all respects, to its jurisdiction and power. *State, use of Washington County, vs.*

*Balt. & Ohio R. R.,* 12 *Gill & John.,* 436 *to* 442; *Angell on Corporations, sec.* 31, *and note* 4, *and authorities there cited; Regents, &c. vs. Williams,* 9 *Gill & John.,* 401; *Cooley on Cons. Lim.,* 192; *Regents, &c. vs. Williams,* 9 *Gill & John.,* 400; *Trustees Dartmouth College vs. Woodward,* 4 *Wheat.,* 518; *Argument of Danl. Webster, Webster's Speeches; Terrett, et als., vs. Taylor, et als.,* 9 *Cranch,* 52; *People vs. Morris,* 13 *Wend.,* 331; *People vs. Wren,* 4 *Scammon,* (*Ill.,*) 273; *City of St. Louis vs. Allen,* 13 *Mo.,* 414; *Allen vs. McKeen,* 1 *Sumn.,* (*Circ. Ct.,*) 276; *Davidson vs. Mayor, &c., of N. Y.,* 27 *How. Pr.,* 342; *Abbott's Digest Law of Corporations, title "Charters," secs.* 158 *to* 171.

MILLER, J., delivered the opinion of the Court:

This action was instituted by the appellee against the Mayor and Council of Hagerstown, a municipal corporation, on the 4th of May, 1867; to recover damages for injury to his hardware store situated within the corporate limits of said town, and for the destruction, injury and taking away of his goods and other personal property therein deposited, done by riotous and tumultuous assemblages of people on the nights of the 24th and 25th days of May, 1862. The suit, in form an action on the case, was brought under the provisions of Article 82 of the Code, which is a codification of the Act of 1835, ch. 137. The constitutional validity of this law has been recognized by several decisions of this Court, and was in no wise assailed in this case. Its provisions are familiar and need not be here stated at length. It is only necessary to say that it fixes no limit of time within which suits under it may be brought and prescribes no form of action for the injured party, but simply declares that "the full amount of the damage so done shall be recoverable by the sufferer or sufferers by suit at law against the county, town or city within whose jurisdiction such

riot or tumult occurred," "and that in any suit under this Article, the plaintiff may declare generally and give the special matter in evidence."

The defendants besides *non cul.* pleaded that the cause of action did not accrue within *three years* before suit instituted. The plaintiff demurred to the plea of limitations and that demurrer was sustained. The verdict and judgment were in favor of the plaintiff upon issue joined on the plea of "not guilty," and this appeal by the defendants presents the single question, was the demurrer to the plea of limitations rightfully sustained by the Court below?

Before this suit was instituted, the Legislature had passed the Act of 1867, ch. 282, amending the second section of Article 82 of the Code, so as to provide "that any cause of action that may have *heretofore* arisen under the first section of this Article shall be prosecuted within the period of *five years* from the time of such cause accruing, and not after; and all causes under the first section *hereafter* accruing, shall be prosecuted within the period of *three years* from the time of the accrual of the same."

The suit having been brought more than three and less than five years after the cause of action accrued, the power of the Legislature to extend the time of limitations in such cases is the question to which most of the very able and elaborate arguments of counsel both oral and written have been addressed. The Court has encountered great difficulty in arriving at a satisfactory determination of this question, and it was in consequence of this difficulty that a re-argument was ordered at the last term. It has now become our duty notwithstanding the embarrassments which still surround it, to dispose of the case.

To determine the statute to be invalid, it must of course be assumed that the existing law of limitations in

Article 57 of the Code, was applicable to actions like the present. It cannot be. said however, in view of the decisions in *French vs. O'Neale*, 2 *H. & McH.*, 401, and *Keedy vs. Newcomer*, 2 *Md.*, 19, that, that question is entirely free from doubt.

The annulling of this Act must also assume that it is not within the scope of legislative power to pass a law which will have the effect to revive, as between private individuals, a cause of action which was completely barred by limitations before its passage. It must be conceded that the weight of authority elsewhere sustains this proposition. *Cooley's Cons. Lim.*, 369. But it is not clear that the Maryland decisions would allow of its adoption here. They have not yet gone to that extent, and what has been said by this Court in *Baugher vs. Nelson*, 9 *Gill*, 299, would present a serious obstacle to that result, at least so far as actions arising *ex contractu* are concerned. But upon this point we express no opinion for assuming this position to be sound, and that laws thus operating upon causes of action between private individuals are inoperative and void, still we are of opinion after the best consideration we have been able to give the subject, that this Act is of such a character that its validity must be sustained.

Before considering what its true character is it may be well to recur briefly, to some of the well settled principles which govern Courts when dealing with grave questions of this kind. They are always regarded as the most important that can be submitted for adjudication. It is certainly an attribute of judicial tribunals in this Country, to annul an Act of the Legislature when it is manifest that in passing it, the Legislature have violated or abused the powers granted to them by the people. But this high power is to be exercised with the most guarded circumspection and care. An Act emanating from a co-ordinate branch of the Government is pre-

sumed to be valid, and all agree that it is incumbent
upon those who assail a Statute on the ground of its in-
validity, to make out a clear case of legislative usurpa-
tion. 9 *Gill*, 304. The usual grounds of attack are
alleged infringements of some of the express or neces-
sarily implied inhibitions of the Constitution of the State
or of the United States; but even with respect to such
objections the Courts have uniformly declared they would
not, *in any doubtful case*, pronounce an Act of the Legis-
lature void. 15 *Md.*, 389 ; 12 *G. & J.*, 438. No objec-
tion of this kind is made to the present law. But it is
said that independent of such constitutional restrictions
"there is a fundamental principle of right and justice
inherent in the nature and spirit of the social compact,
the character and genius of our government, the causes
from which they sprang and the purposes for which they
were established, that rises above, and restrains, and sets
bounds to the power of legislation, which the Legislature
cannot pass without exceeding its rightful authority.
It is that principle which protects the life, liberty and
property of the citizen from violation in the unjust exer-
cise of legislative power." 9 *G. & J.*, 408. Extreme
cases of such legislative usurpations may, and sometimes
do, occur where there would be no redress for the citizen,
unless there resided in the judicial Department of the
Government, the power to declare them void, and where
no protection could be found, save in an honest and fear-
less exercise of that power by the Courts. Retrospective
laws which have the effect to divest parties of vested and
valuable rights, are generally stated as instances of such
usurpation. But it is not an easy matter to determine what
the vested rights thus protected are. No clear, definite
or comprehensive rule on that subject is to be found. By
the current of decisions in other States the right to plead
the Statute of Limitations when it has once run and be-
come a bar to a demand arising either *ex contractu* or *ex*

*delicto*, is treated as a vested right, beyond the reach of retrospective legislation. In *Baugher vs. Nelson*, it is said "when vested rights are spoken of by the Courts, as being guarded against legislative interference, they mean those rights to which a party may adhere, and upon which he may insist without violating any principle of sound morality. There can be no vested right to do wrong. In the nature of things there can be no vested right to violate a moral duty, or to resist the performance of a moral obligation." In that case a retrospective law which deprived a party of the right *to avoid a contract of loan* by pleading in bar of the action thereon, the Statute of usury, in force at the time the loan was made and the contract created, was sustained as valid and as interfering with no vested right. Whether there exists any well founded distinction between the right to a defence of this character, and the right to plead limitations is a question that need not now be discussed. Nor is it necessary for the purposes of this case to enter upon an enquiry into the nature and effect of limitation laws in their operation upon cases of contract and tort, whether in both they merely operate upon and affect the remedy, or in the latter, strike down and extinguish the right. Our judgment proceeds upon a different and distinct ground.

All the cases to which we have been referred, or our own researches have disclosed, are suits or actions between individuals, and all the legislation declared null and void on this ground, has been such as operated directly upon and divested rights vested in private persons or private corporations. Such is not the character or effect of the law here assailed. It is not directed against individuals or private corporations. It applies to the counties, incorporated towns and cities of the State, and to all of them. Between these public bodies and private citizens, there is a wide and substantial distinction, with respect to vested rights protected from

legislative power. They are public corporations created by the Legislature for political purposes, with political powers, to be exercised for purposes connected with the public good, in the administration of civil government.

They are instruments of government subject at all times to the control of the Legislature with respect to their duration, powers, rights and property. It is of the essence of such a corporation, that the government has the sole right as trustee of the public interest, at its own good will and pleasure, to inspect, regulate, control and direct the corporation, its funds and franchises. These are the unquestioned general doctrines on this subject, sustained by all the authorities. 9 *G. & J.*, 397, 401 ; 12 *G. & J.*, 399; 15 *Md.*, 462, 490 *to* 492. In the case of *East Hartford vs. Hartford Bridge Co.*, 10 *How.*, 534, the Supreme Court in speaking of *Towns*, declares them to be "mere organizations for public purposes, liable to have their public powers, rights and duties modified or abolished at any moment by the Legislature. They are incorporated for public, and not private objects. They are allowed to hold privileges or property only for public puposes. The members are not shareholders, nor joint partners in any corporate estate, which they can sell or devise to others, or which can be attached and levied on for their debts ; hence, generally, the doings between them and the Legislature are in the nature of legislation rather than compact, and therefore to be considered as not violated by subsequent legislative changes."

Indeed, in view of the doctrines thus broadly and distinctly announced, it would be difficult to conceive how such corporations could have conferred upon them or could acquire any vested rights not subject to legislative control. The case of *State, use of Washington County vs. The Baltimore & Ohio Rail Road Company*, 12 *G. & J.*, 399, is a very instructive one, as to the power the Legislature may exercise over the supposed

rights of such corporations. The Legislature in an Act to promote internal improvements, had inserted a proviso, that if the railroad company did not locate their road so as to pass through Hagerstown, they should forfeit one million of dollars to the State, *for the use of Washington County.* The company failed to make the designated location, and *suit was then brought* against them in the name of the State, for the use of the county, to recover this sum. The Legislature then passed an Act releasing this forfeiture, and directing all suits against the company for its recovery, to be discontinued. The validity of this latter Act was assailed, but was sustained by the Court. After announcing some of the general doctrines above stated, in that part of their opinion where they treat the case as one of contract, and not of penalty, they say in this view of the case, "it is material to consider who are the contracting parties, and in what relation does the *cestui que use* stand to the legal plaintiff on the record? The contracting parties are the State on the one part, and the railroad company on the other. The consideration of the contract were the franchises and privileges derived by the company from the State, and the *cestui que use* is one of the *counties of the State,* claiming an interest incidentally in her political character and capacity, in virtue of one of the provisions contained in that contract. The State for reasons which she deemed sufficient, has thought proper, by an Act of her Legislature, to *annul the contract and release the claim* of the *cestui que use,* which this action has been instituted to enforce. In doing so, the Legislature have not transcended their constitutional limits. Washington County by which the claim is attempted to be enforced, is one of the public territorial divisions of the State, established for public purposes, connected with the administration of the government. In that character she would receive the money as public property, to

be used for public purposes only, and not for *the use of her citizens* in their private individual characters and capacities.    In that relation *they would have no immediate interest, and could assert no title.*  She is one of the instruments of the government, invested with a local jurisdiction, to aid in the administration of public affairs, and may be emphatically termed a part of the State itself. If then it be public, and not private property, it would seem to be completely at the disposal of the government, and the Act of 1840, was nothing more than a rightful exercise of legislative power."     This judgment was affirmed by the Supreme Court, in 3 *How.*, 534, where it was held that by the repealing Act, the Legislature had dealt altogether with matters of public concern, and had interfered with *no private right*, because neither the County Commissioners nor the county, nor any one of its citizens, had acquired any separate or private interest in this money, which could be maintained in a Court of justice.    These citations are made more especially for the purpose of clearly showing that no *rights* of individual citizens which the Courts can notice or protect, are invaded by such legislation, though their interests may be indirectly affected by it.

How then stands the case before us?    The Legislature, by the Act of 1835, embodied in the Code, had made these public corporations liable to be sued by the injured party; for *neglect* on the part of the corporate or municipal authorities to use due and reasonable diligence in *exerting the powers* with which the law had clothed them for the prevention or suppression of riots or mobs, by which individual citizens might suffer loss or injury. The power of the Legislature to impose this liability has not been questioned.    Nor does it appear to be an arbitrary, unreasonable or unqualified requirement, for it carefully provides that "no such liability shall be incurred, by any county, incorporated town or city, unless

the authorities thereof shall have had good reason to believe that such riot or tumultuous assemblage was about to take place, or having taken place, shall have had notice of the same in time to prevent the injury or destruction either by its own police or with the aid of the citizens of such county, town or city, it being the intention of this Article that no such liability shall devolve on such county, town or city, unless the authorities having notice have also the ability of themselves, or with their own citizens, to prevent the injury; and in no case shall indemnity be received when it shall be satisfactorily proved that the civil authorities and citizens of such county, town or city, when called on by the civil authorities, have used all reasonable diligence, and all the powers entrusted to them, for the prevention or suppression of such riotous or tumultuous assemblages." That law was in force when the Act of 1867 was passed, which provides that suits may be brought for causes of action that may *heretofore* have arisen under this existing law within *five years* from the time of their accrual and not after. The objection is that this takes away a *vested right* to plead the pre-existing limitation of three years in bar of the suit. But by whom is this objection made? Not by any one to be personally bound by the judgment, or whose property can be levied on and seized in execution for its satisfaction or on which it can operate as a lien, but by a public municipal corporation created by the Legislature for public purposes, charged with the duty and invested with the power to protect the property of the citizen, and deriving its existence and discharging its functions at the will and by the direction of the supreme legislative power of the State. That is the party which asserts as residing in itself, in its public corporate capacity, this vested right beyond the control of its creating and governing power. In our judgment no such vested right exists in the appellants, and were

it not for the rights and interests of the tax-paying inhabitants of the municipality lying behind, and which may be indirectly but ultimately affected by this law, there would be no difficulty in the case. But after the most careful consideration of that question, we are of opinion the law is not invalid because its ultimate effect may be to subject them to increased taxation. That might be a strong argument when addressed to the Legislature against the wisdom and policy of such legislation, but with that the Courts have no concern. They can pass no effective judgment upon that question. Their province is to determine the naked question of legislative power, and upon this alone must the law stand or fall. The tax-payers are not parties to this suit; their property is not bound by the judgment and cannot be taken in execution for its satisfaction. They can be reached and their interests affected only by and through an exercise of the taxing power conferred upon the corporation, which could have been exerted to the same extent for the prevention as for the satisfaction of the injury complained of. This indirect and contingent interest or responsibility does not amount to a *vested right* which the Courts can recognize and protect against a positive enactment of the Legislature, lawfully imposed upon the corporate body whose constituents they are. In our judgment the power of the Legislature to impose the liability in the first instance carries with it the power to direct and determine the time and manner in which it shall be enforced. A different state of case would be presented if the Legislature had in the first instance imposed a direct tax, or commanded these corporations to impose one, upon the people of any particular town, county or city of the State, in order to make compensation for past injuries of this character. The Legislative records of this and other States contain statutes which were intended to, and in effect did, impose or enforce taxation of this

description; but it does not appear that any question as to their validity has ever been raised and determined by the Courts, and it is not our duty now to express any opinion upon that question. Our duty in this case is simply to pass upon the validity of the law before us, and for the reasons already stated, we determine it to be valid; we cannot pronounce it an instance of legislative usurpation of power. It is to be observed the clause of the statute we have considered, is so clearly retrospective in its terms as not to admit of any construction to the contrary. But that fact alone is no objection to its validity. There is no provision in the Declaration of Rights or Constitution of this State, or of the United States, prohibiting the passage of retrospective laws affecting *civil causes*. The decision by Judge STORY in 2 *Gallison*, 139, is based expressly upon a provision of the Bill of Rights of New Hampshire, denouncing retrospective laws "either for the decision of *civil causes* or the punishment of offences." The corresponding provision in our Declaration of Rights is by its terms confined to retrospective criminal or *ex post facto* laws, and this has been regarded as a recognition of the right of the Legislature to pass retrospective laws so far as they relate to civil cases and contracts. 9 *Gill*, 306.

*Judgment affirmed.*

(Decided 20th December, 1872.)