## ROYAL F. WILLIAMS *v.* ALSON L. WILDER.

*Usury. Promissory Note. Statute of Limitations.*

The defendant was applied to by the plaintiff to loan the plaintiff some money. The defendant finally undertook to raise the money, or get some one to do so, upon the following terms,—the plaintiff was to receive $700., and give a note for $840., secured by a mortgage on his farm, and they agreed upon the time and place of carrying out the transaction. Previously the defendant, unbeknown to the plaintiff, had arranged with one H. to furnish the money and take the note and mortgage; and at the appointed time and place H. met the parties, and the transaction was carried out in that way, though the plaintiff had previously dealt with the defendant alone, for the loan. Soon after this H. paid to the defendant $75., which was paid by H. and received by the defendant, as a part of the transaction of the loan, and in consequence of the bonus of $140. being included in the note. The defendant subsequently purchased the note and mortgage, and the plaintiff paid him the amount of the note including the $140., with the interest thereon. H. acknowledged he had one-half of the extra amount included in the note, and settled with the plaintiff for the share he had received. The plaintiff then brought this action against the defendant for the balance. *Held,* that the defendant was a party to the usurious contract, so as to make him liable to refund so much of the usury paid, as he received, though not named as a party in the security given.

*It seems,* that had the defendant had no connection with the usurious contract, but been merely an innocent holder of the note while current, the plaintiff could not have resisted payment of the usury; the law being regarded as settled that where the statute merely declares the consideration illegal, without saying the security shall be void, then the security is good in the hands of an innocent holder for value, if taken in due course of business in the mercantile sense.

But had the defendant taken the note with knowledge of the usury, without having had any connection with the contract, the plaintiff might have resisted payment of the usury; but whether he could recover it back when paid, *quere.*

H. paid the defendant the said $75. more than six years before this suit was brought, but the plaintiff made the payment on the note to the defendant within six years. *Held,* that the plaintiff's cause of action arose when the last payment was made.

ASSUMPSIT, in the common counts, to recover back money alleged to have been paid as usury. Pleas, the general issue, and statute of limitations.

The case was referred, and the referee reported that sometime in the fall of 1851, the plaintiff informed the defendant that he wanted to borrow some money, and told him the amount. The defendant then gave some encouragement that he would raise the money for him, but told the plaintiff he would have to pay a little something extra, as he, the defendant, sometimes had to pay extra. In March,

1852, and a short time before the plaintiff wanted to use the money, the plaintiff saw the defendant at Wilmington, and spoke to him again and asked the defendant if he could have the money as they had before talked. The defendant told him he could not raise it so; but after some further conversation the defendant undertook to raise the money, or get some one to do so, on the following terms, viz: The plaintiff owned a farm in Readsboro which was mortgaged to a Mr. Raymond for about six hundred dollars,—the defendant, or the person he should find to furnish the money, was to furnish seven hundred dollars, with which the plaintiff was to pay the mortgage to Raymond and relieve his farm from all incumbrance, and for the seven hundred dollars to execute his note for eight hundred and forty dollars, payable in four years, with interest annually, and give a mortgage on his aforesaid farm as security,—and the parties were to meet at Readsboro to transact the business. Before this arrangement was made, the defendant had seen Frederick G. Hubbard, who had agreed with the defendant to furnish the money, upon the representation that the security was good and sufficient. In accordance with this arrangement the parties met at Readsboro on the third day of April, 1852, the plaintiff supposing that he had negotiated with the defendant alone, for the loan. But Hubbard came with the defendant to Readsboro. When the parties had met there the mortgage of said Raymond was discharged, and all incumbrances were taken off from the plaintiff's farm. Hubbard then produced the seven hundred dollars, and the plaintiff executed his note to Hubbard for the sum of $840., payable in four years, with interest annually. The note was made payable to Hubbard or order, and at the same time the plaintiff executed a mortgage of said farm to secure payment of the note. The farm was ample security for that purpose. The said Hubbard furnished and delivered the money for which the note was given, from his own funds. At the time this arrangement was carried out, or within a few days afterward, Hubbard paid to Wilder, the defendant, seventy-five dollars, which the defendant testified was from the generosity of Hubbard, for seeing to the mortgage.

Both the defendant and Hubbard testified that the defendant had no interest in the loan. But the auditor found that the $75. was

paid by Hubbard and received by Wilder as a part of the transaction of the loan to the plaintiff and by reason of the bonus of $140. included in the note aforesaid. The defendant subsequently purchased the note and mortgage, and on the 31st day of March, 1856, the plaintiff paid to the defendant the amount due on the note, including the said $140., with annual interest thereon. Hubbard was paid the face of the note and interest thereon.

On the same day the writ issued in this case, the plaintiff procured a writ against the defendant and Hubbard jointly, when Hubbard finally admitted that he had one-half of the extra amount included in the note, and the plaintiff settled with him for the share he had received, and Hubbard gave the plaintiff his note for $75. and the plaintiff discharged him, and thereupon brought this suit. If from the foregoing facts the plaintiff is entitled to recover, the $70., being half of the said $140., amounted at annual interest, at the time said note was paid by the plaintiff, to the sum of $88.23, and simple interest on that amount from March 31st, 1856, the date of the payment of the note by the plaintiff, to the first day of the term of the court to which this report is made, amounts to $120.58, which is due the plaintiff, with costs.

On the report, at the Aprill Term, 1864, BARRETT, J., presiding, the court rendered judgment for the plaintiff for the sum found by the referee,—to which the defendant excepted.

*Charles N. Davenport*, for the defendant.

I. Judgment ought to pass for the defendant, for he has not taken, "directly or indirectly," *of the plaintiff*, any sum "for the forbearance of any other sum, for any time. G. S., 507, § 3. To lay the foundation for an action upon this statute, two facts must exist. *The plaintiff must have paid usurious interest, and the defendant must have received it of the plaintiff.* 2 Parsons on Con., 384–5 and 387 ; *Floyer* v. *Edwards*, Cowper, 112. The taking of security for usury is not the offence or illegality, but the receiving payment of it. *Thomas* v. *Cleaves*, 7 Mass. 361.

The statute upon which this action is founded reads : " No person shall take, *directly* or *indirectly*, more than the value of six dollars for the forbearance of one hundred dollars for one year, and at the same rate for a greater or less sum, and for a longer or shorter

time." The defendant has not forborne any sum, for any time, directly or indirectly. What the statute means by the terms "directly or indirectly", is this : A man shall not *directly* take more than six per cent. interest, nor shall he *indirectly* by the sale of property at an exorbitant price, or by the transfer of worthless securities, in connection with a loan, be allowed to evade the statute. *Dyer* v. *Lincoln*, 11 Vt. 300 ; *Austin* v. *Harrington*, 28 Vt. 130 ; *Floyer* v. *Edwards*, Cowper, 112 ; *Whipple* v. *Powers*, 7 Vt. 457 ; 2 Parsons, 385, *et seq.*, and notes.

II. But the statute of limitations affords a shield to the defendant. Whatever usury the defendant received was on or about April 4th, 1852. The writ issued March 25th, 1862. The defendant's relation to the plaintiff after the purchase of Hubbard was precisely that of any other person who might have become the owner of the note and mortgage. The defendant's notice that the note was tainted with usury might possibly have afforded the plaintiff a defence, *pro tanto*, yet if he chose not to defend, but to pay voluntarily, he cannot recover back. If the plaintiff ever had any cause of action against the defendant, it accrued immediately after the payment by Hubbard. *Nelson* v. *Cooley*, 20 Vt. 201.

*W. H. Follett* and *H. N. Hix*, for the plaintiff.

.POLAND, Ch. J. The first inquiry suggested by this case is whether the plaintiff has paid any usurious interest to the defendant, in such manner as to be entitled to maintain an action against him to recover it back. The report shows that in the note the plaintiff gave to Hubbard, there was included one hundred and forty dollars usury ; that Hubbard sold and transferred the note to the defendant, and that the ultimate payment of the whole note, both the legal and illegal part, was made by the plaintiff to the defendant. This was the sole payment ever made by the plaintiff, and he had no right of action to recover for any usury paid by him, until he made this payment to the defendant. That the plaintiff might have successfully resisted the payment of the usurious part of the note as against the defendant, admits of no doubt, because the case shows the fullest knowledge by the defendant of the illegality of this portion of the note when he purchased it. The plaintiff's counsel say that he could have done so, if the defendant had been an innocent purchaser of the

note while current.   But this we think admits of great doubt.   Under the English statutes against usury, which expressly made the security infected with usury void, this was so, and so of all notes or other securities founded on considerations made illegal by statute, when the statute so declares.   But where the consideration is merely declared illegal by statute, without saying the security shall be void, we understand the settled law to be otherwise, and that such security is good in the hands of an innocent holder for value, if taken in the due course of business in the mercantile sense.   This was so held in this state in *Converse* v. *Foster*, 32 Vt. 828, in the case of a note given for liquors sold in violation of the statute.

And the same has been decided in Massachusetts, under their statute restraining the sale of spirituous liquors, which is much like ours. But it does not necessarily follow, that because the plaintiff might have avoided the payment of the usurious part of the note to the defendant, if he voluntarily paid it, he could recover it back as usury paid.   For my own part, I do not see any great objection to allowing the action to be sustained against a party with whom the usurious contract was not made originally, but who has purchased the note and received payment of it with full knowledge that a portion of it was usurious.   But we are not prepared to decide this without more consideration, and neither do we find it necessary to the determination of this case.   The defendant we think was a party to the usurious contract in this case, so as to make him liable to repay so much of the usury paid, as he received, though not named as a party in the security given.   He was the party who actually made the contract for the loan with the plaintiff, and procured Hubbard to furnish the money.   We do not mean to decide that one who as the mere agent of another effects an usurious loan, becomes liable, but the defendant was more than this ; he was a party really interested and intended to be benefitted by the usurious part of the agreement.

Notwithstanding the various shifts and falsehoods told to cover it up, the real contract is apparent.   Hubbard furnished the seven hundred dollars that was really loaned to the plaintiff, and the one hundred and forty dollars usury included, was for the mutual benefit of Hubbard and the defendant, and they were to divide the plunder

40

equally. If under this agreement the defendant received his share of the usury, we see no reason, upon the strictest construction of the statute, why he should not be compelled to repay it. It would not be claimed that one could avoid liability for usury taken by him because he made his note payable to another man.

And we do not see why the defendant should not be equally liable as if a note for one-half the usury had been made payable to, and actually paid, directly by the plaintiff to him.

That the defendant actually did receive his half of the usury is found by the referee, and that it was all paid by the plaintiff. But the defendant claims that if he was ever liable to the plaintiff for any usury received by him, it was paid and received more than six years before this suit was brought, and is therefore barred by the statute of limitations.

It was decided by this court in the recent case of *Davis* v. *Converse et al.*, 35 Vt. 503, that the statute applies to such payments. Did the plaintiff's claim for usury paid, as against the defendant, accrue more than six years before the commencement of the action?

Soon after the usurious note was executed by the plaintiff to Hubbard, (as the security for it was ample), Hubbard paid over to the defendant his half of the usury, and this was more than six years before suit; and the defendant alleges that if he ever received any usury it was then. But this was a matter the plaintiff had nothing to do with. He had paid nothing, and notwithstanding he had given his obligation to pay, he could recover nothing until he had actually paid more than the legal part of the note and the lawful interest thereon.

The referee reports that when the defendant took the note from Hubbard he paid him the full face of the note. The defendant claims therefore that when the full amount of the note was paid him by the plaintiff, he only paid him what he had paid to Hubbard, and that therefore he received no usury. But this fact is to be taken in connection with what had already transpired, that the defendant had then in his hands one-half the amount of the usury which he had received from Hubbard, so that really he paid Hubbard for the note, deducting one-half the usury. The case stands, so far as this question is concerned, just as if the plaintiff had paid the lawful part,

and one-half the usurious part, to Hubbard, and then Hubbard had handed the note to the defendant, and the plaintiff had paid the other half of the usury to him. The plaintiff was not affected by the payment Hubbard made to the defendant; no right then accrued to him, which he could enforce, and therefore no time began to run against his right.

The plaintiff found the note wholly unpaid in the defendant's hands, and paid the full amount to him, and he had the right to understand that the defendant took the usury under and according to his original contract to have it. We think therefore the cause of action arose when the plaintiff made the payment to the defendant.

The defendant was the actual party making the oppressive and usurious contract with the plaintiff; he was to share in the usurious part of the agreement, and did so; the plaintiff has paid the usury and the defendant has received it; and it would be a reproach to the law, if it is so impotent that it can give no redress against the real wrongdoer. On this subject of usury the law disregards all pretence and sham, and deals with the reality, and wherever one has usury in his pocket, it will reach it, by whatsoever name it may be called.

Judgment affirmed.