## Francis P. Scott *vs.* John Leary.

*Recovery of Usurious Interest—Effect of a Bill of Particulars—Demurrer—Pleading.*

In this State a borrower may recover back, in an action for money had and received, the usurious interest he has paid.

In an action of *assumpsit*, the declaration professed to contain the common money counts, and a count upon an account stated   The defendant, without pleading to the declaration, demanded a bill of particulars, which was furnished, and it showed that the plaintiff sought to recover back the excess of interest over and above the legal rate which he had paid to the defendant on two several loans.   The defendant then filed a general demurrer to the declaration.   Held:

1st. That the effect of the bill of particulars was to show the plaintiff's entire cause of action under all the counts of his declaration, and the effect of the demurrer interposed after the bill of particulars was filed, was to admit the cause of action to be as therein stated, and to deny that it furnished any ground of action, thus fairly presenting the question whether usurious interest could be recovered back by the borrower in such form of action ?

2d. That the plaintiff was entitled to recover back the amount of interest he had paid in excess of the legal rate.

One good count in a declaration is sufficient to sustain it against a general demurrer.

Appeal from the Baltimore City Court.

This is an action of *assumpsit* brought by the appellant against the appellee.  The declaration professed to contain the common money counts, and a count for money found to be due from the defendant to the plaintiff, upon an account stated between them, but there was an omission of the words " and for " directed by the Code, (*Art.* 75, *sec.* 22,) to be prefixed to each successive count or statement of a cause of action, after the first.

A further statement of the case will be found in the opinion of the Court.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER and ALVEY, J.

*T. B. Mackall* and *Thomas W. Hall, Jr.*, for the appellant.

While it is undoubtedly true, that "the Statute Law of Maryland upon the subject of usury, is to be found in the Act of 1704, ch. 69, as amended by the Act of 1845, ch. 352, and in the provisions of the Constitution of 1851, Article 3, section 49; Constitution of 1864, Article 3, section 50, and Constitution of 1867, Article 3, section 57," it is equally true that in every stage of legislation upon this subject, and through all the successive changes introduced both in the organic and statute law, the right of the party who has paid illegal interest, to recover back the usurious excess, both at common law and in equity, has been uniformly recognized.

The Act of 1704, ch. 69, which forfeited the principal as well as interest of the usurious loan, and gave besides a *qui tam* action to the informer to recover treble the amount so loaned, by way of penalty, was substantially a copy of the English Statute, 12 Anne., ch. 16. That an action for money had and received would lie to recover back interest paid in excess of the legal rate, was admitted both under the Maryland Statute and its English prototype. *Browning vs. Morris, Cow.*, 790; *Williams vs. Hedley*, 8 *East.*, 378; *Smith vs. Bromley*, 2 *Douglas*, 696, (*note*); *Lucas vs. Latour*, 6 *H. & J.*, 100.

After the Act of 1845, ch. 352, had modified the Statute law of this State, introducing the identical provision which is the basis of the present Article 95, title *Usury*, in the Code of Public General Laws, the same doctrine continued to be recognized. *Baugher vs. Nelson*, 9 *Gill*, 308; *Thomas vs. Watson, Taney's Dec.*, 304.

Since the adoption of the Code, and the last revision of the Constitution in 1867, the same principle has been admitted and applied in equity. *Hitch vs. Fenby*, 6 *Md.*, 223; *Andrews vs. Poe*, 30 *Md.*, 485.

In other States where the common law prevails, and where there has been subsequent legislation similar to the present Statute Law of Maryland, the same point has been expressly decided. *Wheaton vs. Hibbard*, 20 *Johns.*, 289, 293; *Grow vs. Albee*, 19 *Verm.*, 540; *Boardman vs. Roe*, 13 *Mass.*, 104.

The case of a party who seeks to recover back usurious interest which he has paid, is distinguished from, and taken out of the rules which govern ordinary cases of *illegal* contracts executed in whole or in part, or cases of voluntary payments. In usurious transactions, the parties are not regarded as in *pari delicto.* The whole theory of legislation and of the adjudged cases is, that the lender is the guilty party, and the borrower the unfortunate victim for whose protection usury laws are enacted. The payment of usurious interest is presumably under duress—the law taking note, in this particular, of the duress of poverty and of the borrower's necessities— and is not within the rule applicable to voluntary payments or the operation of the maxim *volenti non fit injuria.* 3 *Parsons on Contracts*, 127, 128; 2 *Smith's Leading Cases*, 528, (*note to Merryweather vs. Nixon*); *Story's Eq.*, sec. 302.

The position that relief from the consequences of a usurious contract can only be obtained in the way prescribed by the Act of 1845, viz: by waiting for a suit to be brought by the creditor, and "specially pleading the facts by way of defence," cannot be maintained. The Act of 1845, ch. 352, relates to the single case where the usurious contract itself is sought to be enforced at law, in which case the defence of usury must be *specially* pleaded, and cannot be availed of under the general issue. Other remedies remain as at common law, unaffected by the statute. Where there is a remedy at common law, and a further remedy is given by statute, without a negation, express or impled, of that which exists at common law, both remedies remain, and that which is given by statute is cumulative merely. *Sedgwick on Statutory Con.*, 402; (see also *pp.* 34, 93); *Dwarris on Statutes*, 474; *Wright vs. Freeman*, 5 *H. & J.*, 467; *Wheaton vs. Hibbard*, 20 *Johns.*, 289, 293.

The present usury law gives no *remedy* whatever, but merely regulates the form of plea. It leaves to the debtor or borrower all the remedies which he might have at common law.

Was the question decided below regularly raised by the pleadings? The omission in the *record* (a clerical omission purely) of the words " for " after the prefatory clause, " money payable by the defendant to the plaintiff," and also of the words " and for " directed by the Code (*Art.* 75, *sec.* 22,) to be prefixed to each successive count or statement of a cause of action, after the first, although such omission may impair the grammatical connexion, does not affect the legal sufficiency of the declaration. The declaration in the record is distinguishable from the pleading held bad on demurrer in *Merryman vs. Rider, ante* 98, and *Pearce vs. Boarman, Garn. Kendig, et al.,* decided at April Term, 1871, and not to be reported. See also *Fagg vs. Mudd,* 3 *Ell. & Bl.,* 77 *Eng. Com. Law,* 650.

The true question to be considered in determining the sufficiency of any pleadings under the Code, is not whether the rules of syntax are strictly observed, but whether substance is sufficiently expressed. No conciseness is bad which does not mislead the pleader, (*Fagg vs. Mudd, ut supra.*) The spirit in which section 22, Article 75 of the Code, relating to " Pleading and Practice," should be construed, is clearly indicated by the Code itself. *Art.* 75, *secs.* 3, 6, 7 and 22. See also *Act of* 1870, *ch.* 420.

But all question on this head is removed by the bill of particulars, which, for the purposes of the suit, is an extension or amplification of the declaration, and contains a full statement of the plaintiff's cause of action. See *Evans' Prac.,* 212; 1 *Tidd's Pr.,* (*Am. Ed.,*) 599.

*C. L. L. Leary,* for the appellee.

The action is not brought in the proper form. Under the 4th section, Article 95, of the Code of Public General Laws, the usurious creditor "*forfeits*" all the excess above the real

sum actually lent and the legal interest thereon. The plaintiff then should have sued in "debt," either in the old form of "*qui tam*," or as directed by the Code, Article 40, section 1. *Boehme vs. Aisquith,* 4 *H. & J.,* 207.

The remedy against usury can only be taken advantage of by the debtor *as a defence.* It cannot be asserted as an affirmative demand *Act of* 1704, *ch.* 69; 1845, *ch.* 352, *sec.* 1, where the particular form of plea is prescribed; *Code of Pub. Gen'l Laws, Art.* 95, *sec.* 5.

Where a form of remedy is prescribed by a statute, that form must be pursued. 1 *Chitty's Pleadings,* 112, (11*th Am. Ed.,*) *note* (6); *Adams vs. Wood,* 2 *Cranch,* 341; *Blackburn vs. Baker,* 7 *Porter,* (*Ala.*) 284.

If a party has no other right than what is derived from the statute, his remedy must be under the statute. *Almy vs. Harris,* 5 *Johns.,* 175.

The remedy provided by the Code applies only to cases *where the lender is seeking to enforce his claim* against the borrower. In *Baugher vs. Nelson,* 9 *Gill,* 309, the plea in bar was usury under the Act of 1704, chapter 69; the pleas were ruled bad, as not complying with the Act of 1845, chapter 352, requiring the borrower to designate in his plea the amount actually loaned, &c., as now required in 5th section, Article 95, of the Code. *Bandel vs. Isaacs,* 13 *Md.,* 225.

The proposition that usury can only be urged as a defence is confirmed by Act of Congress of 22d April, 1870, chapter 59, entitled "An Act to amend the Usury Laws of the District of Columbia." See 4th section, where the party paying usurious interest is expressly authorized to bring his action. In Virginia also, this form of remedy is prescribed by special statute. 2 *Rob. Prac.,* 482.

The declaration does not allege that the defendant received the money claimed. Proof of the actual receipt of the money by defendant, or in this case, an allegation to that effect, is indispensable. *Brent & Horsey vs. Ferry,* 9 *Md.,* 227; *Parker vs. Fassitt,* 1 *H. & J.,* 339.

The declaration does not allege that the principal debt and lawful interest has been paid, nor does the plaintiff tender payment of the debt and lawful interest; it alleges payment of excess of interest above six per cent., but does not allege payment of the principal. *Lucas vs. Latour*, 6 *H. & J.*, 100; *Baugher vs. Nelson*, 9 *Gill*, 308; *Carter vs. Dennison*, 7 *Gill*, 157.

The payment of excessive interest by the plaintiff in this case was *voluntary*—it was not compulsory. *Mayor, &c. vs. Lefferman*, 4 *Gill*, 431, 436; *Morris vs. Mayor, &c.*, 5 *Gill*, 244.

MILLER, J., delivered the opinion of the Court.

This suit as shown by the bill of particulars was instituted to recover an excess of 4 per cent. over and above the legal rate of 6 per cent. interest paid by the plaintiff to the defendant on a loan of $7,500, from the 11th of May, 1866, to the 5th of February, 1868, and a like excess on another loan of $4,500, from the 5th of February, 1868, to the 11th of November, 1869. The whole amount claimed is $634, and it is assumed as must be admitted by the pleadings or established by the proof, that the principal sums with legal interest thereon as well as the excessive interest have been paid to the defendant. The declaration to which there is a general demurrer is in *indebitatus assumpsit* and contains the common money counts, and the count upon an account stated. The main question presented by the record and which has been fully argued at bar, is, can this action to recover back this excessive interest be maintained?

But for our present Statutory and Constitutional provisions on the subject of usury this question would not be open for discussion. It is undeniable that at common law a party who has paid excessive interest may recover it back in an action for money had and received. To such cases the maxims "*in pari delicto potior est conditio defendentis*," and "*volenti non fit injuria*," have no application. This proposition is asserted by all the elementary writers, amongst whom we refer to *Comyn on Usury*, 210; 1 *Story's Equity*, sec. 302, and to

2 *Smith's Leading Cases, notes by Hare & Wallace,* 523, where the American authorities on the subject are collected, but it is sufficient for us that the Court of Appeals in *Baugher vs. Nelson,* 9 *Gill,* 308, have said it is "established that if the borrower has paid money upon an usurious contract, both the Courts *of Law* and of Equity will enable him to recover back the excess paid beyond the principal and lawful interest, but not further." The reasons upon which this doctrine is founded are stated by Lord MANSFIELD, in *Browning vs. Morris, Cowp.,* 792, and in 3 *Parsons on Cont.,* 128, where it is said "the distinction has been taken between statutes enacted on general grounds of policy and public expediency in which each party violating the law is *in pari delicto* and entitled to no assistance from a Court of justice, and those laws enacted to protect weak or necessitous men from being overreached, defrauded or oppressed, in which event the injured party may have relief extended to him, and the whole purport and reason, both of the law of usury and of the great mass of decisions under it, indicate that the lender on usury is regarded as the oppressor and the criminal, and the borrower as the oppressed and injured." This remedy exists and these decisions have been made in view of statutes similar to our former Act of 1704, ch. 69, which forbids the exacting or taking of more than 6 per cent. interest, makes void all usurious contracts and imposes upon the usurer, for every offence of usury, a forfeiture of treble the value of the money or thing loaned, one-half to go to the State, and the other half to "him or them who shall sue for the same," and which is allowed "to be recovered in any Court of record by action of debt, bill plaint, or information." The borrower being thus clearly entitled to this common law remedy, whilst statutes of this character were in force, the question is has he been deprived of it by any subsequent legislative or other provisions on the subject, or have such provisions so far changed the law respecting usury as to render inapplicable now the reasons and principles upon which the allowance of this remedy is

founded? It is a well settled and familiar rule of law that where a *new statute* prescribes a particular remedy none can be taken but that given by the Act, but where a right exists independent of the statute, or where a party has a remedy at common law for a wrong, and a statute be passed giving a further remedy without an express or implied negation of the common law remedy, both remedies remain, and that which is given by statute is merely cumulative. 1 *Chitty's Pleadings*, 112; *Wright vs. Freeman*, 5 H. & J., 467; *Wheaton vs. Hibbard*, 20 *Johns.*, 290; *Alvey vs. Harris*, 5 *Johns.*, 174. The first of these subsequent provisions is the Act of 1824, ch. 200. It had been determined that a security tainted with usury in its origin, would remain worthless in the hands of an innocent assignee or holder, and this Act provides that the original law of 1704 should not be construed so as to destroy the right of such assignee or holder for value and without notice, of any such security, to sue and recover thereon. This law in no way affects the question now under consideration.

The Act of 1845, ch. 352, is next in order. It repealed in express terms the penal section of the Act of 1704, and provided that if in any suit at law or in equity *upon any contract* of loan, any person should seek to avail himself of the provisions of the Act of 1704, he must specially *plead* the same, and set out in his plea the principal sum and interest thereon *at the rate of 6 per cent. per annum*, actually and *bona fide* due, and upon the trial of any issue joined on such plea, the jury at law, and the Chancellor or Judges in Equity, shall ascertain the amount of principal and such interest due on the contract, and judgment or decree shall be rendered in favor of the plaintiff therefor. It is very clear this law gives to the borrower *no new statutory remedy*, but takes away in part the remedy, or rather the defence, which the former statute gave him. Prior to this Act it had been decided in accordance with the English decisions, that the borrower, being at all times under a moral obligation to pay to the lender the sum actually loaned with legal interest, could not as *plaintiff* obtain

relief either at law or in equity, except upon the equitable condition of paying to his creditor the sum actually and fairly due after deducting the illicit interest, *Lucas vs. Latour*, 6 *H. & J.*, 100; *Trumbo vs. Blizzard*, 6 *G. & J.*, 18; but where he stood in Court as a defendant he could relieve himself from the entire contract, because the statute had declared it utterly void. The effect of the Act of 1845, was to compel the borrower who, as *defendant*, sought to extricate himself from a usurious contract to do precisely what he was before obliged to perform when he asked to be protected against it in the position of a *plaintiff*. 9 *Gill*, 308. After this statute it could no longer be said the contract was void *in toto*, but the *legal* rate of interest was still *fixed*, and there is not only no express negation of the common law remedy to recover excessive interest, but there is nothing in the language or professed object of the Act, from which a legislative intent to that end can be inferred. It treats entirely of the *defence* which the borrower may make when sued as a *defendant*, leaving unaffected every remedy which he before had when seeking relief as a *plaintiff*. In *Thomas vs. Watson*, (*Taney's Circuit Court Dec., by Campbell*, 307,) decided in 1846, shortly after this Act was passed, Ch. J. TANEY said, "although this law abrogates the penalties inflicted by the Act of 1704 in cases of usury, and permits the party to recover the sum actually loaned, with legal interest thereon, yet the contract so far as the *usurious interest* is concerned is still made void and the *policy* of the former law in *that respect* remains unaltered." The Constitution of 1851, provided that "the rate of interest in this State shall not exceed 6 per cent. per annum, and no higher rate shall be taken or demanded, and the Legislature shall provide by law all necessary penalties and forfeitures against usury," and the question arose whether a usurious contract was not by force of this provision made void *in toto*, which was settled by the case of *Bandel vs. Isaac*, 13 *Md.*, 202. The decision in that case is that the Constitution did not of itself make void the contract in whole, but merely fixed the legal rate of interest, that

it was for the Legislature by forfeiture and penalties to punish the usurer and avoid the contract in whole or in part as to it might seem best, and until such provision should be made by law, the Act of 1845 remained in force.

We find nothing in this decision affecting the present question. It is true the Court say the Act of 1845 "is nothing more than an Act relating to the remedy, that is to say, the *mode* in which the party seeking to avoid any part of the contract on the ground of usury, shall bring such *defence* to the notice of the Court, and until he does bring such defence to the notice of the Court in legal contemplation, it has no existence," but this refers entirely to the *defence* which the borrower may rely upon when sued, and has no application to his right as *plaintiff*, at law or in equity, to recover back or get rid of the excess. That question was not before the Court, and was not intended to be, nor was it in fact decided in that case. The Code of 1860 (Article 95,) provides that interest may be charged or deducted at the rate of 6 per cent., and "if any person shall exact, directly or indirectly" any greater rate, "he shall be deemed *guilty of usury*," and "any person guilty of usury shall forfeit all the excess above" the sum actually lent and legal interest thereon, "which forfeiture shall enure to the benefit of any *defendant* who shall *plead* usury and prove the same," and that "every plea of usury" shall be the same as that prescribed by the Act of 1845. The Constitution of 1864 contained the same provision as that of 1851. The present Constitution provides that "the legal rate of interest shall be 6 per cent., unless otherwise provided by the General Assembly," thus remitting again to the Legislature full control over the entire subject. But under this no legislation has yet taken place, and the provisions of the Code still remain in force. That the borrower could, since the Act of 1845, maintain his bill in equity if filed within a reasonable time, for relief against usury, has never been questioned in any of the cases of that character which have arisen. *Hitch vs. Fenby,* 5 *Md.,* 218; *Wetter vs. Hardesty,* 16 *Md.,* 11;

*Banks vs. McClellan*, 24 *Md.*, 62 ; *Andrews vs. Poe*, 30 *Md.*, 485.

We have thus stated at some length the several changes in the law of usury in this State, and many of the decisions of our Courts thereunder. From them it is very apparent, that whilst much, if not all of the harshness of the old statute has been removed by the removal or modification of penalties and forfeitures, and by leaving the contract, under all circumstances, to remain good for the principal sum loaned and legal interest, yet the legal rate is still fixed, and the exacting of usury, in language at least denounced, and all excessive interest forfeited. To this extent the law still retains its essential characteristic of a statute to protect the weak and necessitous, and the common law remedy to recover back such excess in an action for money had and received, is nowhere in express terms taken away, or decided by the Courts to be no longer applicable. This remedy afforded by the Courts to the plaintiff borrower, upon the equitable condition of paying or proving that he has paid the principal and legal interest, has existed from the earliest times, almost from the day the first usury law was enacted, and when, as defendant, his defence on this ground, if he chose to take it, was far more effective for relief than now, and we can discover nothing in the present state of our law which would justify us in deciding it no longer exists. We have examined recent decisions in other States, and find they maintain, with almost entire uniformity, the same doctrine. They say it is too well settled to admit of doubt, that the payment of usurious interest is not a voluntary payment in any such sense as to entitle the receiver to retain the sum paid above legal interest, that no other proof of duress or oppression is necessary than such as is involved in the act itself of taking the money under an usurious contract, and that the excess may be recovered in this form of action. *Philanthropic Building Association vs. McKnight*, 35 *Penn. State Rep.*, 470 ; *Porter vs. Mount*, 41 *Barb.*, 561 ; *Williams vs. Wilder*, 37 *Verm.*, 613. The law

being thus settled, it is not in the power of the Courts to change it. It must so remain until the Legislature shall, in plain terms, declare that usurious interest once paid shall not be recovered back, and it is entirely for that department of Government to decide whether the time has now arrived for further legislation on the subject.

It remains for us to show that the question thus decided, properly arises in this case; and this is a matter of some importance in practice. As we have said, the declaration professes to contain the common money counts, and a count upon an account stated. The defendant, without pleading thereto, demanded a bill of particulars which was furnished, and its purport has already been stated. The defendant then filed a general demurrer to the declaration, which the Court below sustained and gave judgment thereon for the defendant, and from that judgment the plaintiff has appealed. It is very correctly stated in *Evans' Prac.*, 258, that the mode of obtaining a bill of particulars in this State differs very materially from that in England. The usual practice here is for the party before plea or replication to enter a demand for a bill of particulars on the docket, which is furnished by the party called upon, instead of a replication or rejoinder, and the party making the demand is again placed under rule plea or replication, and the pleadings and cause then proceed as usual. Mere formal defects in a bill of particulars are disregarded, but it must in substance inform the defendant of the nature of the plaintiff's claim, and if it does not the defendant may, provided he does so in due time, (*Randall vs. Glenn*, 2 *Gill*, 430,) move the Court to compel the plaintiff to amend it. The office and legal effect of a bill of particulars (as decided in *Carter vs. Tuck*, 3 *Gill*, 250,) is to extend to and inform the antagonist party what is claimed under each and every count in the *narr.*, be they many or few. The effect therefore of the bill of particulars furnished by the plaintiff in this case, is to show his entire cause of action under all the counts of his declaration, and at the trial

he will undoubtedly be precluded from giving any evidence of any other demand or claim. In our opinion the effect of the demurrer interposed after this bill of particulars was filed, is to admit the cause of action to be as therein stated, and to deny that it furnishes any ground of action, and hence fairly presents the question we have determined and on which the judgment must be reversed. We do not mean to decide that a bill of particulars is itself the subject of a demurrer or that in this or any case it so far forms a part of the declaration as to cure any substantial defect in the latter that would be fatal on general demurrer. But here if the demurrer had been interposed before the bill of particulars was filed, and thus presented the naked question of the sufficiency of the *narr.*, it ought to have been overruled, because the declaration, as it appears in the record contains at least one good count, that for " money found to be due from the defendant to the plaintiff on accounts stated between them," (*Fagg vs. Mudd*, 25 *Eng. L. & Eq., Rep.*, 224, which is sufficient to sustain it against a general demurrer.

*Judgment reversed*
*and new trial awarded.*

(Decided 31st May, 1871.)