# Richmond.

SUPERVISORS OF STAFFORD COUNTY V. LUCK.

FEBRUARY 12th, 1885.

1. CONTRACTS—*Legislative acts—Repealable.*—Act of February 9th, 1882, empowering supervisors of Stafford county to build a bridge across Rappahannock river, and commissioners appointed by the county judge to manage it after its erection, is simply a grant by the State of certain privileges for public purposes, and contains none of the elements of a contract.

2. IDEM.—Therefore the act of March 18th, 1884, virtually repealing that act, does not impair the obligation of any contract with those supervisors, or with those commissioners, or assail any vested rights, and is not unconstitutional and void

Appeal from decree of circuit court of Fredericksburg, entered July 21st, 1884, in the causes of the Board of Supervisors of Stafford county against Brown, Lowndes & Co., and of Luck and others against Board of Supervisors of Stafford county. The latter suit was instituted by Luck and other tax-payers of said county to enjoin the said supervisors from levying a tax, in advance of issuance and negotiation, to pay the interest on county bonds which were necessary to be issued and negotiated in order to raise funds to pay for erecting the free bridge across the Rappahannock river near Fredericksburg, under act of February 9th, 1882. The former suit was instituted to compel the defendants specifically to perform their contract with the supervisors to purchase twenty-four of said bonds, each being for the sum of $1,000, at certain agreed rates. The circuit

court decided both causes against the supervisors, enjoining the levy of the said tax in the one, and refusing to decree specific performance of the contract in the other.

From that decree the supervisors obtained an appeal to this court.

Opinion states the remaining facts.

*John T. Goolrick, Jos. Christian,* and *F. S. Blair,* for the appellant.

*Little & Little* and *Marye & Fitzhugh,* for the appellees.

LEWIS, P., delivered the opinion of the court.

In the argument of the case, a number of questions were discussed by counsel, which need not be considered by the court. The case lies within a narrow compass, and may be briefly disposed of.

It is very clear that the bridge commissioners, whose appointment is provided for by the act of February 9th, 1882 (Acts 1881–'82, page 66), must be regarded merely as local agents of the State. The act does not invest with any rights of property in their individual or private capacities. The object of their appointment was essentially and exclusively public— namely, the erection and management of a bridge across the Rappahannock river to connect two of the counties of the State for the public convenience. They, therefore, stand towards the State, so far as the present case is concerned, in the same attitude as the supervisors of Stafford county, a public *quasi* corporation, who are charged by the act with the duty of building the proposed bridge, when petitioned to do so by the requisite number of voters of the said county, and who are empowered by the act to borrow money to defray the necessary expenses attending its construction. In other words, the su-

pervisors are charged with the duty of building the bridge and levying taxes to meet the loans to defray the expenses thereof, and the commissioners are charged with the duty, under the direction of the county judge, of controlling and managing it, after its erection, "in the interests of the said county and such other county and districts or corporation as may subscribe," &c. In no just sense, then, can it be said that a *contract* was entered into by the State, on the one hand, and the supervisors and commissioners on the other, by the passage of the act under which the latter were appointed, or by anything that has since occurred. The act is simply a grant by the State of certain privileges for public purposes, containing none of the elements of a contract, and therefore subject to be changed or repealed altogether as the Legislature may see fit. These propositions are well-established and incontrovertible. The authorities upon the subject are numerous and unanimous. The question was elaborately considered by the supreme court of the United States in the case of *East Hartford* v. *The Hartford Bridge Company*, 10 How. 511, in which it was held that a law granting to the town of East Hartford the right to keep a ferry across a public river, did not constitute a contract between the State and the town, so as to preclude the legislature from revoking the grant. In delivering the unanimous opinion of the court, affirming the judgment of the supreme court of Connecticut, Mr. Justice Woodbury said: "The parties to this grant did not by their charter stand in the attitude towards each other of making a contract by it, such as is contemplated in the constitution, and as could not be modified by subsequent legislation. The legislature was acting here on the one part, and public municipal and political corporations on the other. They were acting, too, in relation to a public object, being virtually a highway across the river, over another highway up and down the river. From this standing and relation of these parties, and from the subject-matter of their action, we think that the doings of the legislature as to this ferry must be con-

sidered rather as public laws than as contracts. They related to public interests. They changed as those interests demanded. The grantees likewise, the towns being mere organizations for public purposes, were liable to have their public powers, rights, and duties modified or abolished at any moment by the legislature. They are incorporated for public, and not for private objects. They are allowed to hold privileges or property only for public purposes. The members are not shareholders, nor joint partners in any corporate estate, which they can sell or devise to others, or which can be attached and levied on for their debts. Hence, generally, the doings between them and the legislature are in the nature of legislation rather than compact, and subject to all the legislative conditions just named, and therefore to be considered as not violated by subsequent legislative changes. It is hardly possible to conceive the grounds on which a different result could be vindicated, without destroying all legislative sovereignty, and checking most legislative improvements and amendments, as well as supervision over its subordinate public bodies.  *   *  It is as much the duty of the legislature to continue to regulate such public matters and bodies as to organize them at first. Where not restrained by some constitutional provision, this power is inherent in its nature, design and attitude; and the community possess as deep and permanent an interest in such power remaining in and being exercised by the legislature, when the public progress and welfare demand it, as individuals or corporations can, in any instance, possess in restraining it."

In *Laramie County* v. *Albany County*, 92 U. S. 307, it is said that except where the constitution of the State otherwise provides, municipal corporations, such as counties, cities, and towns, are the mere creatures of the legislative will; and inasmuch as all their powers are derived from that source, it follows that those powers may be enlarged, modified, or diminished at any time, without their consent or even without notice.  *   *  Their officers are nothing more than local agents of the

State; and their powers may be revoked or enlarged, and their acts may be set aside or confirmed, at the pleasure of the paramount authority, so long as private rights are not thereby violated. See also *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *Maryland* v. *The B. & O. R. R. Co.*, 3 How. 534; *Meriwether* v. *Garrett*, 102 U. S. 472; *Mayor, &c.* v. *Sehner*, 37 Md. 180; *Wade* v. *City of Richmond*, 18 Gratt. 583; *City of Richmond* v. *R. & D. R. R. Co.*, 21 Id. 604; *Lewis* v. *Whittle*, 77 Va. 415; 1 Dillon on Munic. Corp. (3rd ed.), sections 63, 114, and cases cited.

After the institution of the present suit, the act of February 9th, 1882, was amended by an act in force March 18th, 1884, Acts 1883–'84, page 697. The amendatory act provides that it shall be the duty of the county court of Stafford, when petitioned by fifty voters of said county, one-half of whom shall be freeholders, to cause a vote of the voters of the county to be taken upon the question of authorizing the supervisors to build a bridge across the Rappahannock river at or near the town of Fredericksburg. And, among other things, it further provides, that notwithstanding the vote be determined in favor of building the bridge, the commissioners shall have "full power to buy or lease either or both of the existing bridges at Fredericksburg or Falmouth instead of building such bridge."

This act virtually repeals the act of February 9th, 1882, and is assailed as impairing vested rights, and therefore as unconstitutional and void. This objection, however, made as it is by the supervisors of Stafford and the bridge commissioners only, who are the appellants here, is conclusively disposed of by what has already been said. No other persons are complaining, nor does it appear that there are any whose rights have been violated, and who have cause of complaint. The appellees, Brown and Lowndes, with whom the board contracted for the sale of certain county bonds to be issued, are not only not complaining, but strenuously insist that the contract is void, and cannot, therefore, be enforced at law or in equity.

But if it be true that third persons have been injured, the law provides ample remedies for the assertion and vindication of their rights. It is certain that the appellants have no cause of complaint, and the decree of the circuit court must therefore be affirmed.

Decree affirmed.